IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LAURA BEERMAN,                              Case No. CV-06-6262-AA

                                            OPINION AND ORDER

        Plaintiff,

    v.

FEDEX GROUND SYSTEMS, INC.,
a Delaware Corporation, and
KEITH JENKS, an individual,

        Defendants.
_____

Kevin T. Lafky
Larry L. Linder
Haley Percell
Laftky & Lafky
429 Court Street NE
Salem, OR 97301
     Attorneys for plaintiff

Richard R. Meneghello
Rachelle Hong Barton
Fisher & Phillips
111 SW Fifth Avenue, Suite 1250
Portland, OR 97204
     Attorneys for defendant


1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit against her former employer, FedEx Ground (FedEx), alleging gender discrimination, hostile work environment, and retaliation under Title VII (42 U.S.C. § 2000e *et. seq.*) and Or. Rev. Stat. § 659A.030.  Plaintiff further alleges state common law claims of wrongful discharge, intentional infliction of emotional distress, and reckless infliction of emotional distress.

Plaintiff also filed suit against Keith Jenks, her former co-worker, for battery and reckless infliction of emotional distress. Defendant Jenks is not represented by counsel and has not made an appearance in this matter.  Prior to this motion, defendant Federal Express Corp. was dismissed by plaintiff in this action.

Before the court is FedEx's Motion for Summary Judgment on all of plaintiff's claims.  For the reasons set forth below, I deny FedEx's motion as to the hostile work environment, retaliation, and wrongful discharge claims, and grant summary judgment on the gender discrimination and intentional and reckless infliction of emotional distress claims.

## I.  Factual Background

In September 2004, plaintiff started working at FedEx's Connecticut location.  On January 27, 2005, plaintiff voluntarily transferred to FedEx's Salem facility and worked as a package handler.  Plaintiff was responsible for loading packages into trucks, placing smaller packages into bags and "SWAKing."  SWAK

2 - OPINION AND ORDER

stands for scan, weigh and key, and consists of scanning packages on the conveyor belt and typing in the barcode on a 10-key keypad when necessary.

During her approximate six days of employment at the Salem facility, plaintiff alleges that she was subjected to harassment and sexual assault by fellow package handler Jenks. For example, on her first day, plaintiff was introduced to Jenks by her supervisor, manager Brian Johnson, and Jenks was "overly friendly" and gave her a "big hug, squeezing too tight." Declaration of Haley Percell (Percell Decl.), Ex. 1, pp. 12:18-13:7. Plaintiff objected, telling Jenks that his actions made her uncomfortable and he apologized. Later that day, Jenks asked plaintiff out for drinks with several other people and she declined. She asserts that Jenks asked her two or three more times if she wanted to go, even though everyone else at work had already left.

During the course of plaintiff's employment, Jenks brought her food, told her over the radio at work that he had left his jacket and food for her at her workstation, and called her cell phone before she came to work to see if she wanted anything to eat. She declined, with the exception of one occasion where he brought her food and she paid him back. Plaintiff also avers that FedEx gave Jenks her private cell phone number to assist her with making childcare arrangements. According to plaintiff, Jenks called her between one and five times a day.

3 - OPINION AND ORDER

After plaintiff declined Jenks' overtures, plaintiff alleges that Jenks "cornered" her at work, wanting to know what her problem was, why she wouldn't go out for a drink with him, why she was being so cold and why she did not want to use his wife as a babysitter. Plaintiff told Jenks he was making her uncomfortable and to leave her alone.

Plaintiff also alleges that Jenks commented on her breasts and said something to the effect that he "could see [her] nipples and that they were hard . . . and that it turned him on while he was at work." Percell Decl., Ex. 1, p. 29:18-24. Because she was made uncomfortable by this comment, plaintiff started to wear baggy clothes to work.

Plaintiff further contends that Jenks attempted to grab her rear-end as she was climbing up the ladder to the SWAK station. Plaintiff told Jenks to stop bothering her and to leave her alone.

Finally, on February 3, 2005, plaintiff gave Jenks and another employee a ride home from work. Plaintiff alleges that after she dropped off the other employee, Jenks assaulted her in the car by trying to kiss her, grope her breasts and unbutton her pants. That evening or the next day, plaintiff called her former Connecticut supervisors, Claudine Pfalzgraff and Trisha Robbins, and told them that a package handler was harassing her, made comments about her breasts and that there was an "incident" with him in her vehicle. Pfalzgraff and Robbins encouraged plaintiff to file a complaint

4 - OPINION AND ORDER

with her supervisor. Despite Jenks' behavior, plaintiff gave Jenks a ride home on Friday, February 4, 2005.

On Monday, February 7, 2005 plaintiff was ill and needed to call in sick. She did not have the phone number to call her supervisor and called Jenks for the number. When plaintiff spoke to a supervisor, either Johnson or Senior Manager Monty Hopper, she discovered that Jenks had already called in that she was sick. Plaintiff was encouraged to come into work despite being sick because they needed her.

On February 8, 2005, plaintiff again called in sick. Plaintiff also spoke with Hopper on his cell phone and complained about Jenks. She told Hopper that it was inappropriate that Jenks had called in sick for her and also told him that Jenks was "being way too hands-on and friendly and was making [her] feel very uncomfortable." Percell Decl., Ex. 1, p. 59:15-24. Plaintiff indicates that Hopper told her he would talk to Jenks. In his deposition testimony, Hopper recalled that plaintiff sounded upset on the call and he thought the situation needed more investigation. Hopper called Dan McMackin, FedEx's Regional Human Resources Manager, about plaintiff's complaint.

The next day, February 9, 2005, Hopper placed plaintiff on "on-call status," which meant that plaintiff would no longer come into work unless FedEx called her when they needed her. Plaintiff maintains that Hopper told her that she was placed on-call because

she was sick and needed rest, and FedEx still had to figure out her pay rate.    Hopper has a different recollection that he told plaintiff the reason he was placing her on-call was because she was not fast enough as a SWAKer and that rather than terminating her, FedEx would try to find her another position.

During the week of February 14, 2005, plaintiff submitted a written complaint to FedEx detailing her complaints against Jenks, including the alleged assault in the car.    Later, FedEx initiated an investigation into the allegations and interviewed Jenks. Following this interview, Jenks did not show up for work and never returned to work again.

FedEx offered plaintiff two other positions after she was placed on-call.    Plaintiff turned down the positions, one because the hours were between 2:30-7:00 a.m., and the other because it would have required her to commute to Portland from Salem during rush hour for a four-hour shift.

Plaintiff filed suit on October 20, 2006.    FedEx again offered plaintiff a position at FedEx after she filed suit, which she declined.

## II.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."    Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the  substantive law  on  the  issue.  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.</u>, 809 F.2d 626, 630 (9th Cir. 1987).  The authenticity of a  dispute  is determined by whether the evidence is such that a reasonable jury  could  return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine  issue  of  material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323  (1986).  If  the moving party shows the absence of a genuine issue of material  fact,  the  nonmoving  party  must  go beyond  the pleadings and identify facts which show a genuine issue for trial.  <u>Id</u>. at 324.

Special  rules  of  construction apply to evaluating summary judgment motions:  (1) all reasonable doubts as to the existence of genuine issues of material  fact  should  be  resolved  against the moving party;  and  (2)  all  inferences  to  be  drawn  from  the underlying facts must be viewed in the light  most favorable to the nonmoving party.  <u>T.W. Elec.</u>, 809 F.2d at 630.

<u>III.  Discussion</u>

A.  <u>Gender Discrimination</u>

FedEx moves for summary judgment, arguing that plaintiff fails to establish a prima facie case of gender discrimination under both

Title VII, 42 U.S.C. § 2000e, and Or. Rev. Stat. § 659A.030. Specifically, FedEx contends that plaintiff fails to show:  (1) that she was meeting her employer's legitimate expectations; and (2) a causal connection between the alleged adverse employment action and her gender.  FedEx further argues that it had a legitimate, non-discriminatory reason for placing plaintiff on-call.

To establish a prima facie case of gender discrimination under federal and Oregon law, plaintiff must show that:  (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) she was treated differently from similarly situated individuals outside of her protected class, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Bodett v. CoxCom, Inc., 366 F.3d 736, 744 (9th Cir. 2004); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002); Henderson v. Jantzen, 79 Or. App. 654, 658, 719 P.2d 1322 (1986) (adopting the federal standard for a prima facie case).  "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is *minimal* and does not even need to rise to the level of a preponderance of the evidence." Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002) (citation omitted, emphasis in the original).

8 - OPINION AND ORDER

Under the <u>McDonnell Douglas</u> burden shifting framework, once plaintiff establishes a prima facie case, FedEx then bears the burden of production, but not persuasion, to articulate a legitimate, nondiscriminatory reason for its action. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994). If FedEx does so, the burden shifts back to plaintiff, who must show that the articulated reason is actually a pretext for discrimination. <u>Aragon</u>, 292 F.3d at 658-59.[1]

FedEx does not dispute that plaintiff is a member of a protected class or that she suffered an adverse employment action. Rather, FedEx maintains that plaintiff fails to establish the second and fourth elements of a prima facie case.

First, FedEx argues plaintiff cannot establish that she met her employer's expectations in her job as a SWAKer. FedEx contends that plaintiff was put on-call because her SWAKing performance was not adequate. FedEx cites plaintiff's former supervisors, Johnson and Hopper, who believed plaintiff's performance was below expectations from the beginning because she was too slow in keeping up with the conveyor belt, and Johnson had to assist her in SWAKing. FedEx further contends that because of plaintiff's poor performance, she was given a training video on the 10-key function,

---

[1] Because I find that plaintiff does not establish a prima facie case, I do not address the federal burden shifting formula and the circumstances under which it applies to the state claim.

9 - OPINION AND ORDER

but still failed to show immediate improvement.

Plaintiff contests FedEx's representations about her job performance. Plaintiff emphasizes that there is no documentation in her personnel file that she was not performing adequately as a SWAKer and that she was not disciplined or counseled about her job performance in any way. She acknowledges that Johnson told her the 10-key function "could be a little faster" but maintains that she was not informed that she was not doing her job well or accurately enough. Percell Decl., Ex. 1, p. 88:2-3. Plaintiff also indicates that the training video was actually a general video on the functions of the job and did not specifically address 10-key training.

I find that plaintiff presents sufficient evidence, mainly the lack of disciplinary action or other documentation of poor work performance, to raise a genuine issue of disputed fact regarding whether plaintiff was adequately performing her job as a SWAKer.

Second, FedEx contends that plaintiff is unable to establish a causal link between the circumstances surrounding the adverse action that gives rise to an inference of discrimination. Specifically, FedEx argues that there is no causal connection between the adverse employment action of placing plaintiff on-call and her gender. Rather, FedEx contends that plaintiff was subjected to an adverse employment action because she not performing adequately in her role as a SWAKer. Further, FedEx

notes that plaintiff does not cite evidence to support an inference that Hopper and Johnson's actions were motivated by her gender, and plaintiff was eventually replaced by a female SWAKer.

Plaintiff need only show that the adverse employment action "occurred under circumstances giving rise to an inference of discrimination." Aragon, 292 F.3d at 660 (citation and quotation marks omitted). Here, plaintiff argues that the circumstantial evidence that she was placed on-call the day after telling Hopper that she was uncomfortable with Jenks is sufficient to give rise to an inference of discrimination based on gender.

However, plaintiff does not cite any case where reporting a complaint, followed by an adverse employment action, is sufficient to give rise to an inference of gender discrimination. Rather, plaintiff relies on cases that discuss proximity of time in the context of retaliation. Moreover, plaintiff does not allege any facts that suggest she was put on-call because she is female. Plaintiff does not allege or present evidence of discriminatory comments or conduct by her supervisors based on her gender, or that people outside of her protected class were treated differently. As such, there is no evidence that the adverse employment action was based on her gender.

For these reasons, plaintiff has not met the minimum standard necessary to establish a prima facie case of gender discrimination. Accordingly, I grant FedEx's motion for summary judgment as to

11 - OPINION AND ORDER

plaintiff's gender discrimination claim.

B.  Hostile Work Environment

Plaintiff alleges hostile work environment claims based on sexual harassment under both Title VII and Oregon law.  FedEx moves for summary judgment arguing that:  (1) plaintiff was flattered, rather than offended, by some of Jenks' alleged behavior; (2) plaintiff's evidence is too weak to prove a hostile work environment; and (3) FedEx remedied any harassing conduct it knew or should have known about.

For a hostile work environment claim to survive summary judgment, plaintiff must demonstrate that:  (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).  In applying these requirements, the Supreme Court has held that, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).  Instead, a hostile workplace environment is one that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that victim in fact

did perceive to be so." Id. at 787.  Under Oregon law, plaintiff
need only show that an objectively reasonable person could find
that an intimidating, hostile or offensive working environment was
created.  Fred Meyer, Inc. v. Bureau of Labor & Indus., 152 Or.
App. 302, 307, 954 P.2d 804 (1998).

      FedEx does not challenge the contention that plaintiff was
subjected to behavior of a sexual nature.  Rather, FedEx argues
that summary judgment should be granted because plaintiff was
flattered by some of Jenks' behavior, and Jenks' other offensive
behavior constituted isolated incidents rather than an abusive
environment.  Alternatively, FedEx argues that it cannot be held
liable for Jenks' actions because FedEx remedied all harassment
after receiving notice.

      FedEx maintains that plaintiff admitted in her deposition that
she was flattered by Jenks' attention when he offered to bring her
food, let her use his jacket, and asked her out for drinks.
However, the record contains evidence that plaintiff found at least
some, if not all, of Jenks' behavior offensive.  Plaintiff's
deposition testimony reflects that Jenks' conduct was unwelcome and
made plaintiff uncomfortable.  Plaintiff testified that the first
time she met Jenks he gave her a hug that made her uncomfortable
enough to tell him so.  Plaintiff's testimony reflects that she
told Jenks directly on a number of occasions to leave her alone.
Plaintiff also started to wear baggy clothing to work because of

13 - OPINION AND ORDER

Jenks' comments about her breasts.  Plaintiff also complained to her former Connecticut supervisors on different occasions about his unwanted advances.  Even if, as FedEx argues, some of Jenks' behavior was initially considered flattering, this assertion does not alter plaintiff's testimony that the circumstances quickly deteriorated to the point where plaintiff found Jenks' behavior offensive and unwanted.

FedEx also argues that Jenks' behavior was not pervasive enough to create a hostile work environment.  FedEx concedes that there are two incidents at work that plaintiff did not welcome: when Jenks allegedly made inappropriate comments about plaintiff's breasts and when he attempted to grab her rear-end.  FedEx argues that these are the only two instances of offensive conduct and because they are isolated, they are not pervasive enough to create a hostile work environment.

However, as FedEx has reminded this court, plaintiff worked at FedEx's Salem facility for six days, or approximately 21.3 hours.  During plaintiff's very short tenure, she was subjected to at least these incidents of unwelcome comments and attempted touching.  Indeed, Jenks' comments about plaintiff's breasts caused her to start wearing baggy clothes to work.  Additionally, plaintiff testified that she was "cornered" by Jenks who demanded to know why she was not responding to his advances.  At a minimum, three instances of clearly unwelcome conduct occurred in this short time

14 - OPINION AND ORDER

frame, raising an inference that the harassment was sufficiently severe and pervasive enough to alter plaintiff's work environment.

Based upon the record before me, and construing all inferences in the light most favorable to the plaintiff, I find that disputed issues of fact exist as to whether Jenks' conduct was unwelcome and sufficiently pervasive to constitute an abusive environment.

Alternatively, FedEx argues that summary judgment is appropriate because it fulfilled its duties to plaintiff once it became aware of Jenks' alleged harassment and cannot be held liable for his conduct.

A plaintiff may state a case for harassment against an employer under a theory of either vicarious liability or negligence. Swinton v. Potomac Corp. 270 F.3d 794, 803 (9th Cir. 2001). If the perpetrator is a supervisor, the employer can be held vicariously liable; if merely a co-worker, the plaintiff must prove that the employer was negligent. Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 875 (9th Cir. 2001).

Here, Jenks is a co-worker, so the negligence standard applies. In the Ninth Circuit, an employer may be found liable under Title VII for failing to remedy a hostile work environment caused by a co-worker if it "knew or should have known" about the harassment. McGinest v. GTE Service Corp., 360 F.3d 1103, 1119(9th Cir. 2004). The employer's remedy must be effective and "reasonably calculated to end the harassment." Ellison v. Brady,

924 F.2d 872, 882 (internal quotations omitted).  "The failure to react promptly to a complaint, or to reprimand the harasser strongly, is evidence relevant to determine whether the employer took sufficient remedial action."  Mockler v. Multnomah County, 140 F.3d 808, 813 (9th Cir. 1998).

Oregon's discrimination statute, Or. Rev. Stat. § 659.030, mirrors Title VII.  Haskins v. Owens-Corning Fiberglas Corp., 811 F. Supp. 534, 537 (D. Or. 1992).  As with Title VII claims, an employer is liable for the harassing conduct of one employee toward another if it knew, or should have known, of the behavior but did not take "immediate and appropriate corrective action."  Or. Admin. R. 839-005-0030.

FedEx contends that it took appropriate remedial action by initiating an investigation once plaintiff filed a written complaint and FedEx was reasonably aware of the harassing conduct. However, I find that a question exists as to whether FedEx reacted promptly or appropriately to plaintiff's initial complaint when she called Hopper on February 8, 2005.  Plaintiff alleges that after she called in sick, she spoke with Hopper and told him that Jenks was "being way too hand-on and friendly and was making [her] feel very uncomfortable."  Percell Decl., Ex. 1, p. 59:15-24.  Plaintiff testified that Hopper told her he was going to speak with Jenks about his behavior.  Moreover, Hopper testified that plaintiff sounded upset and thought the situation needed more investigation.

Hopper also notified McMackin of the complaint. Yet, FedEx took no immediate action and instead Hopper placed plaintiff on-call.

FedEx maintains that it could not have reasonably have known the extent of Jenks' behavior because plaintiff's complaints that Jenks was too friendly and making her uncomfortable were too vague. FedEx argues that it did not know and should not have known of Jenks' conduct until it received plaintiff's written complaint the week of February 14th, which detailed the sexual assault in the car. At the time of receiving the written complaint, FedEx avers that it took prompt remedial action that relieves it from liability for Jenks' actions.

I find FedEx's position unpersuasive. Whether FedEx knew or should have known of the harassing conduct based on plaintiff's specific statement that Jenks' attentions were making her uncomfortable is a question of fact. At that time Hopper, as her supervisor, could have simply asked her for more specific detail of what was making her uncomfortable. Even without further inquiry, Hopper was concerned enough to verbally report the complaint to McMackin. Additionally, in his deposition testimony, Hopper admitted that a different female employee told him that Jenks made her uncomfortable. Declaration of Richard K. Meneghello, Ex. B, p. 9. Given these circumstances, there is a genuine issue of material fact over whether FedEx was sufficiently on notice regarding plaintiff's complaints when she called Hopper on February 8, 2005.

17 - OPINION AND ORDER

Further, the timing of plaintiff's reclassification to an on-call status raises the spectre that FedEx "remedied" the situation by removing plaintiff from the workplace.  Therefore, FedEx's motion for summary judgment is denied as to plaintiff's hostile work environment claims.[2]

C.  Retaliation

     FedEx argues that its motion for summary judgment should be granted with respect to the retaliation claim because plaintiff cannot show a causal connection between a protected activity and the adverse action of placing her on-call.

     In order to establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate that: 1) she engaged in an activity protected under Title VII; 2) her employer subjected her to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action. Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004).

     The standard under Or. Rev. Stat. § 659.030(1)(f) is similar. A plaintiff must prove that: (1) the defendant intentionally retaliated against the employee because he or she filed a discrimination complaint; (2) the defendant did so with the intent of forcing the employee to leave the employment; and (3) the

_____

[2]Because I find there is an issue of material fact regarding whether the phone call to Hopper put FedEx on notice, I do not evaluate the sufficiency of FedEx's investigation after receiving plaintiff's written complaint.

employee left the employment as a result of the retaliation. <u>Seitz</u>
<u>v. Albina Human Resources Cent.</u>, 100 Or. App. 665, 674-75, 788 P.2d
1004, 1010 (1990).

Here, FedEx does not dispute that plaintiff engaged in an
activity protected under Title VII and that she was subjected to an
adverse employment action. Rather, FedEx contends that the adverse
action was a result of plaintiff's poor performance as a SWAKer,
notwithstanding the timing of the adverse employment action.

Plaintiff argues that the temporal proximity of the complaint
and plaintiff being put on call is sufficient to establish the
causal link between the protected activity and the adverse
employment action. I agree.

Temporal proximity can support an inference of retaliation,
absent other evidence providing a reasonable basis for inferring
that the adverse action was not retaliatory. <u>Villiarimo</u>, 281 F.3d
at 1065. Here, plaintiff was placed on-call the day after she
reported Jenks' harassing conduct, and there is not sufficient
evidence to support the inference that the adverse action was taken
solely based on plaintiff's work performance. These facts,
combined with the lack of evidence documenting plaintiff's
performance, gives rise to an inference that a causal connection
existed between plaintiff's protected activity and the adverse
employment action.

Once plaintiff has established a prima facie case, the burden

shifts to FedEx, who must articulate a legitimate, nondiscriminatory reason for its action. <u>Aragon</u>, 292 F.3d at 660; <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061, 1066 (9th Cir. 2003). FedEx argues that it had a legitimate reason for its adverse action - mainly that plaintiff was performing inadequately as a SWAKer. However, as previously discussed, whether plaintiff was performing adequately is an issue of fact to be determined by a factfinder. As this is an issue of material fact, and there is no other proffered reason for placing her on-call, plaintiff need not demonstrate pretext if she was able to establish a prima facie case.

Even if placing plaintiff on-call because of her performance constitutes a legitimate, nondiscriminatory reason, plaintiff demonstrates sufficient pretext under the <u>McDonnell Douglas</u> burden shifting analysis to survive a motion for summary judgment on her retaliation claim.

There are two ways a plaintiff may demonstrate pretext: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang v. Univ. of California Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000).

Here, a reasonable factfinder could disbelieve FedEx's reason

20 - OPINION AND ORDER

for placing plaintiff on-call, particularly in light of the fact
that she was placed on-call the day after her complaint.  There is
a dearth of documentary evidence that plaintiff was performing her
job poorly.   Rather, there is conflicting testimony between
plaintiff and her supervisors as to plaintiff's performance.
Additionally, there is a dispute of fact over what Hopper told
plaintiff when he placed her on-call.

Accordingly, summary judgment on this claim is not
appropriate.

D.  Wrongful Discharge

FedEx moves for summary judgment on plaintiff's wrongful
discharge claim, arguing that there is no causal connection between
plaintiff's sexual harassment claim and the decision to place
plaintiff on "on-call" status.  However, for the reasons discussed
above, a question of material fact exists as to whether FedEx
placed plaintiff on-call due to her complaints of harassment.
Therefore, summary judgment on this claim is not appropriate.

E.  Intentional Infliction of Emotional Distress

Next, FedEx moves for summary judgment on plaintiff's state
law claim of intentional infliction of emotional distress.  FedEx
argues, as a matter of law, that it cannot be held liable for IIED
for failure to take remedial action, and that it is not responsible
for Jenks' alleged actions under the theory of respondeat superior.

To hold FedEx vicariously liable for Jenks' alleged acts,

21 - OPINION AND ORDER

plaintiff must show that the employee's act were within the course and scope of employment. Chesterman v. Barmon, 305 Or. 439, 442, 753 P.2d 404 (1988). To conclude that the employee was acting within the course and scope of employment, three requirements must be met: (1) the act must have occurred substantially within the time and space limits authorized by the employment; (2) the employee was at least partially motivated by a purpose to serve the employer; and (3) the act is of kind which the employee was hired to perform. Minnis v. Oregon Mutual Ins. Co., 334 Or. 191, 201, 48 P.3d 137 (2002) (internal citation omitted).

Here, plaintiff meets the first requirement, because some of Jenks' alleged conduct occurred at work. However, I do not find that "the employee engaged in conduct that was intended to serve the employer and that conduct resulted in the acts that injured the plaintiff." Vinsonhaler v. Quantum Residential Corp., 189 Or. App. 1, 6, 73 P.3d 930 (2003).

Plaintiff argues that FedEx provided Jenks with plaintiff's phone number and encouraged plaintiff to use Jenks' wife for child care services, thus cultivating a relationship between Jenks and plaintiff. However, this argument is unpersuasive. The allegedly offensive acts were not related to childcare but rather to Jenks' persistent sexual advances. Plaintiff presents no evidence that Jenks' sexual harassment was intended to serve FedEx and the alleged harm stems from this harassment.

22 - OPINION AND ORDER

Accordingly, the theory of respondeat superior does not apply in the instant case because Jenks was not acting within the scope of his employment when he allegedly engaged in offensive conduct towards plaintiff.  Thus, FedEx's motion for summary judgment is granted as to the IIED claim.

F.  Reckless Infliction of Emotional Distress

FedEx argues that summary judgment should be granted on the RIED claim because it does not exist as a cause of action in the employer-employee context in Oregon.  Regardless, I grant summary judgment on the RIED claim for the following reasons.

Oregon law recognized RIED in very narrow circumstances, such as when a legally protected interest is invaded.  See, e.g., Rathgeber v. Hemenway, Inc., 335 Or. 404, 414, 69 P.3d 593 (2003).  Here, plaintiff cites no Oregon case to support a legally protected interest under RIED in these circumstances.

Further, Oregon law has explicitly rejected plaintiff's contention that a special relationship exists between employer and employee to establish a RIED claim.  Indeed, the Oregon Supreme Court held in McGanty that the relationship between an employer and employee is not sufficient to establish a claim for RIED.  McGanty v. Staudenraus, 321 Or. 532, 548, 901 P.2d 841, 853 (1995); see also Snead v. Metro. Prop., 909 F. Supp. 775, 779 (D. Or. 1996) (recognizing that Oregon law does not permit a RIED claim in an employment dispute).  For these reasons, summary judgment is

23 - OPINION AND ORDER

granted as to the RIED claim.

<u>IV.  Conclusion</u>

For the reasons discussed above, FedEx's motion for summary judgment (doc. 41) is DENIED as to the hostile work environment, retaliation and wrongful discharge claims, and GRANTED as to the gender discrimination, intentional infliction of emotional distress, and reckless infliction of emotional distress claims. IT IS SO ORDERED.

Dated this __15__ day of November, 2007.


_____<u>/s/Ann Aiken</u>_____
                              Ann Aiken
                    United States District Judge

24 - OPINION AND ORDER